Good morning. My name is Derek Howard. I'm here for the appellants, and you're correct, the pronunciation is Sud. First off, I'd like to thank the court in general for its attention to these issues concerning disclosures in connection with products that are tainted by forced labor. In the last notice that came out from the court, the court asked us to be prepared to address the most recent decision, which we'll call the Mars decision, which came out a week ago on June 4th. I would like to start with making some points about that case and how that is distinguishable from the case at bar here today. If we can properly capture the essence of the Mars decision, it essentially concludes that omission in and of itself is not sufficient to carry the day for an actionable pleading. We believe that our pleading contains allegations of affirmative misrepresentations, and in fact, the trial court itself down below noted that we had made those allegations. Are they – are you talking about the code of conduct? That's one of the things that we're talking about, yes. And may I address that specifically? Well, I guess the question I have with respect to that is, is it more reasonable to see that as an aspirational statement as opposed to an affirmative misrepresentation? My response to that is no. It's a matter for the trial court to decide. It's a question of fact as to whether or not that is aspirational or whether it's misleading. The history of the California consumer statutes are very clear that courts of any kind should not be imposing their own personal standards as to what is fair or unfair, aspirational or otherwise. We never got a chance to get out of the box and to show that it's not aspirational. So to get to the nitty-gritty of the false representation, our position is that the code of conduct along with other statutes – excuse me, I misspoke – other statements lead the just as an example, I would refer to the first sentence of the document which I think the court is considering entitled, Costco Disclosure Regarding Human Trafficking and Anti-Slavery. And in the first sentence, it states, Costco Wholesale Corporation has a global supplier code of conduct which prohibits human rights abuses in our supply chain. Now, to my reading, which may be different from other people's, but to my reading, that's not aspirational. That's a statement that says there is no taint in our supply chain. And the very essence of the case here, unlike Mars, which was determined to be strictly an omission case, is that Costco is representing to the public that there is no taint in its supply chain. And this leads, I guess, to somewhat of a policy issue here about, as the recent cases have noted, that what is actionable under the consumer laws of the state of California has been in a state of flux. Let me ask you separate from that. What evidence or what allegations were made that your clients actually relied on any of these statements? Well, Your Honor, as I read the Mars decision, the issue here is, as that case holds, we have pled a cause of action because in the future, well, let me back up and answer your question directly. Under the law, it's reasonable to assume that when that consumer reads the plaintiffs here read the website, they certainly have now. And I do believe it's decided law that under the Mars decision and other ones, that you can state a cause of action for future purchases. In other words, as a person that wants to purchase prawns in the future who buy invitation only business where you have to have a card and go in, she wants to buy prawns and she wants to have the right to be able to buy those prawns with the confidence that she's not suffering from a misrepresentation. So I believe that is an accurate statement of the law. And I believe that that was the holding in Mars that injunctive relief is available for future acts. That's putting aside the issue of the loss of buying the product that was tainted, unbeknownst to her. I believe if I've lost the question, I want to be careful to stay with my rebuttal time. I'd like to reserve five minutes, but I would like to I'd also like to refer the court to paragraph 195 through 198 in the first amended complaint. It's not just an issue, Your Honor, of statements, although that's certainly part of it. We have alleged a much more factually intense relationship between Costco on the one hand and CP Foods and the tainted supply. What the previous chocolate cases were referring to was just very strictly, you didn't put it on the label, that's it. We've alleged that Costco and CP Foods, due to the nature of this industry involving things that happen far out to sea, they are actually upholding this illegal enterprise by being one of the largest market makers for seafood, and that in addition to the statements that they're making, they understand and know to their exclusive knowledge that because of their market power, they are actually inadvertently, certainly not intentionally, continuing to allow this decrepit, horrible system to exist. What is the California case, with respect to your argument on affirmative misrepresentation, what is the closest California case that you rely on? I would go back to CELTEC, and I think it's very important here that we do have an issue here where we do have California state law, and the Ninth Circuit is trying to grapple to come up with its best assessment as to what the California Supreme Court would hold. We know from the exhaustive briefing that it's certainly our position joined by others that Collins and Rutledge are intermediate opinions, which allow this court to hold that where there's been a misrepresentation coupled with an omission, that that's actionable under the UCL. And in regard to your question, Your Honor, while opposing counsel is speaking, I'd like to see if I can find a little bit of a better site for you on that. Okay, a few other points. Judge Gould, if I could ask you one question. I was wondering where you draw the line in terms of affirmative misrepresentation. If, for example, Costco, in their code of conduct, we don't tolerate bribery of officials, but someone in their supply chain is bribing a local official, does that make that a misrepresentation? I believe that that is a, okay, you're looking for a yes or no answer, and I think in this would be one lone actor within a corporation, and we have to understand that within the business world, there's always the possibility that there could be one person that's involved in doing an illegal activity. That's how these anti-corruption cases come out with foreign contracts. In this case, however, the Costco machinery, and I use that term loosely, not literally, is engaged in importing billions of dollars' worth of seafood, and I would point out that recently, while our case was pending, the amendment to the Tariff Act of 1930, I believe it's now Section 307, prohibits the import of goods that are tainted by slavery. So in answer to your question, I don't see it as either comparable or feasible that somehow with this amount of commerce that Costco is not aware, and frankly, in the allegations which are quite detailed, we contend that Costco knows exactly what's going on. Thank you. I'd like to take, reserve my time at this point, and then try and come back to Your Honor's question about the best case. Thank you. Good morning. Craig Stewart appearing on behalf of the Pelley Costco Wholesale Corporation. I'd like to start off by addressing counsel's point about the misrepresentations, and I'll note at the outset that he's not trying to argue that the rationale, the central holding of MARS doesn't apply here, which is that there's no duty to disclose unless the omitted information goes to the central functionality of the product. And that rationale applies in spades here, and I didn't hear any argument from counsel disputing that point. It's the same duty to disclose as being alleged in MARS, the other cases that were consolidated with MARS, and in this case. And I think the only reason this case wasn't consolidated with the rest is simply that the motion to dismiss, the ruling on the motion to dismiss didn't come until 6 or 8 months later than in the other cases. So let me address the argument about the, that this case is different because it involves misrepresentations. We heard this morning an argument for the first time literally in this case. It wasn't advanced in the district court. It wasn't advanced in the briefs in this court, which is that even though they didn't see it, they somehow still have a basis for alleging that there was a duty to disclose premised on this alleged misrepresentation. And I'm going to explain in a minute that there really wasn't a misrepresentation as the court can see if it looks at the, the code of conduct itself. But before getting to that, the cases are clear that, and by the cases I'm referring to Daniel versus Ford Motor, a decision of this court, which said an essential element for a fraudulent omission claim is actual reliance. And this court in the Mazda case, Mazda versus American Honda, said that even under the UCL, there's a requirement that you actually have seen, been exposed to the alleged misleading representation. So here their theory is that there was a representation that absent further disclosure was misleading and therefore the further disclosure was needed because somebody could have been misled by the misrepresentation. Well here, if they didn't see it, they couldn't possibly have been misled by it. So there's no predicate for imposing the duty to disclose. And that, that point was not disputed at all in the district court, in the briefing in this court. So we believe that the, the argument that the, the plaintiffs can assert a duty to disclose based on an alleged partial representation has been waived. But, but to the extent that it's been waived, the, their argument is that I think what they're doing is they're mixing up the standard for, from this Court's decision in Davidson about injunctive relief, when a plaintiff can seek injunctive relief with a duty to, the duty to disclose in the first place, and when a party is actually alleged, in fact, Article III standing. And as I just pointed out, the, where you haven't seen the representation, you couldn't have been misled by it. No duty to disclose, therefore, could arise. There's no deception. There's no injury. And so they're, they're, they don't have standing to be in court on that kind of a claim to begin with. So I think not only is the issue waived, it's just, the argument waived, I mean, it's, it's just incorrect. So that's, that's the, the first reason why this case is not, is not, is not, is not different from Mars. When Mars says it was an omissions case, this case is also an omissions case for that reason. But then addressing the point that let's say they had seen it, addressing their argument that there was a misrepresentation, what they're relying on is the code of conduct. They, he says there were other statements. They don't allege that they saw the other statements. They don't even allege what the other statements were. The district court, therefore, rejected that argument on that ground. And again, they haven't challenged that point at all. So their argument about the code of conduct is, this is paragraph 19 of the first amended complaint, which is at ER 190 and 191. And if you put aside the characterizations of that code of conduct and it, and look actually at its language, I think it makes clear the point that Judge Gould was making. There is no misrepresentation here. The first sentence that counsel quoted, that Costco has a supplier code of conduct which prohibits human rights abuses in our supply chain. There's no allegation that Costco does not have a supplier code of conduct that prohibits human rights abuses in its supply chain. And I think what he's arguing is that that's some kind of an implicit representation that because Costco has that code of conduct, therefore, there are never any instances in which, this gets to Judge Gould's question, you know, there's a violation by that code of conduct. And keep in mind here that what we're talking about is not Costco itself, not its direct supplier, which is actually an importer, not the farmers who farm the prawns, not the manufacturers. You may be losing one member of the panel here on trying to say that you can publicly announce that you have a code of conduct that means that you don't tolerate this kind of thing, that that nevertheless means that you aren't representing, that you try to police it, make sure that that happens. Okay. So let me go a little further, then, and see if I can regain that member of the panel. If you go on and read this statement, it addresses, Your Honor, the points you're making, which it addresses what happens when they discover violations of the code of conduct. And what Costco says is that it will respond in a manner that's commensurate with the nature and extent of the violation. It may result in termination of the business relationship, but that Costco may allow a reasonable time to develop and implement a plan to over, to, for remediation and to stop the conduct. In general, Costco says, We prefer working with the supplier to correct the violations rather than immediately terminating the relationship. And I think any reasonable person... In other words, you're going to tolerate this kind of thing. The point is, we're going to work with our suppliers to try to remedy the problem. And that is indeed what the, the complaint alleges. The complaint alleges that this, that there were public reports in June of 2014 in the, in the site, various articles, all coming out in June 2014. And then in paragraph 62 of the complaint, at ER 201, the complaint alleges that in July 2014, Costco helped initiate a task force to address this issue. So I think that it's, you know, the allegations all are consistent with that code of conduct being an accurate representation of what Costco's position is with respect to these kinds of issues. Mr. Stewart, Judge Gould's example of the isolated individual who solicits a bribe, your opponent suggested is different from this sort of persistent, ongoing mistreatment of individuals in the slave labor industry. Explain to me how, why, why that doesn't matter, or does it? Well, I think it's important to look at the allegations again. I mean, the assumption here is that because there are reports of fishing vessels in waters off of Thailand engaging in human trafficking and slave labor, that therefore all of the prawns coming out of Thailand are therefore sourced from the fish that come off of those fishing vessels. And keep in mind, we're still talking about numerous steps. Costco isn't buying fish from those fishing vessels. It's buying prawns that allegedly are fed with fish meal, one component of which is trash fish caught from some fishing vessels. And there's no allegation. I don't think there's any basis for even thinking that every prawn that comes out of Thailand is tainted by whatever degree of human trafficking and slave labor is occurring on some of these fishing vessels out there. And that's the assumption, I think, that upon which his argument is resting. But it's not supported by the allegations of the complaint, and it's not supported by the facts. The leap that they're making is that because Costco continues to sell prawns that were sourced from Thailand, that therefore Costco is continuing to endorse and tolerate human trafficking and slave labor in its supply chain. And there's no facts for that. It's just not in the complaint. And this has been a central issue in the case from the very beginning. And they haven't alleged them. They amended their complaint, and they still haven't alleged those facts. So I don't think that there's a reasonable basis for saying that this supplier code of conduct is a misrepresentation. And on this point, I think there's a further important point to be made, which is, we've argued in our brief that this California Transparency and Supply Chains Act creates a safe harbor. And for the reasons in the brief, I think that that argument is correct. Marra's case didn't need to reach it. This Court doesn't need to reach it in this case. But even putting aside the safe harbor point, what they're trying to do is take this mandated disclosure, but the California legislature has mandated. And that's what this is. Paragraph 19 of the complaint is Costco's disclosure made in compliance with the California Supply Chains Act, and it tracks the requirements of that statute. And so Costco is required to state what its code of conduct prohibits and doesn't prohibit, what kind of auditing procedures it has and doesn't have, and what kind of actions it takes when it discovers issues or learns or is told about issues in its supply chain. That's what Costco's done here, and I believe it's done so accurately. And plaintiffs are trying to turn this mandated disclosure into a misrepresentation. And I think it's a perverse way of turning against a company its obligations that the California legislature has imposed on that company. Just out of curiosity, Costco is a big outfit and must monitor what's going on in State legislatures, and California is a big legislature, big State. Are there anything going on in California to try to beef up their disclosure laws, consumer disclosures? I can't speak for Costco, Your Honor, because I haven't actually spoken with Costco about that issue. I'm not aware of any effort to, you know, amend or modify the Transparency and Supply Chains Act or to impose other disclosure obligations. I do think, however, that that is an important background point for this case and for the Mars case and the other cases that arise in this area. It certainly is true that legislatures, Congress, State legislatures, can and have imposed duties to disclose, including about supply chain issues. The California legislature has enacted the statute we've been talking about, the food and drug, you know, laws regarding nutrition content labeling. So there's lots of duties to disclose with respect to products that legislatures have imposed. And subject to the First Amendment, you know, those are valid and companies need to comply with them. And that really is what these lawsuits are about. They're trying to use the California tort laws and the California consumer deception laws to impose the kind of, you know, nutrition content labeling, impose those kind of obligations on companies that are selling products. And the reason why I believe Mars came out the way it did and the way these other cases have all been limited to product defects and issues that go to the central functionality of a product is that that's the proper domain of the kind of consumer education, consumer enlightenment. We're going to use disclosures to try to force social change. Those aren't consumer deception issues. Those are issues that relate to, as I say, consumer education or trying to use disclosures, the conflict-free minerals regulations, for example, that the SEC has adopted to use disclose. And those, by the way, have been overturned by the D.C. Circuit. But even there, it was a legislative effort, not an effort to use consumer deception laws. And there's just never been this conception that consumer deception laws impose the kind of duties on a company to lay out in the kind of detail that the plaintiffs are talking about, you know, the various issues that they want to have laid out. I don't want to lose sight again on the misrepresentation point. I don't believe there was a misrepresentation. I don't believe that the complaint can be reasonably read in that fashion. But the fundamental reason why that — why the plaintiffs here should lose on that point is that they didn't allege they ever saw it. They never challenged that ruling in the district court. They never raised it here in their briefs on this appeal. And then finally, Your Honor, there — counsel mentioned, well, this case is different from Mars because, you know, Costco is a bigger entity and it has market power. You know, that doesn't really go to the central rationale of Mars. One, it's not really factually supported, by allegations I mean, that the chocolate — the sellers of chocolate in this country have any less significance in that market than Costco does as a seller of one seller of prawns in this country. But, two, it doesn't go to the central rationale of the Mars case, which is that a duty to disclose is limited to the central functionality of the product. And there's no claim here that we're in that ground — in that realm. Thank you. Are there any further questions? No questions, Your Honor. Thank you, counsel. Thank you. Thank you. As I expected, my colleague on the other side of the bar has given me a lot to reply to very quickly. With regard to the cases that you asked about that we felt were ones that the Court should look at, the Sony Gaming Networks case and Tait versus BSH Home, which are cases standing for the proposition that omissions are, in fact, actionable, and I do believe we briefed that. Just to try and come back and give a couple of quick hits, as it were, to the points raised, we did not hear Costco's counsel say that they have eliminated the Tait from their supply chain. And that goes to the very essence of what we're saying, is that they're making statements that are inherently misleading because they are incomplete. It's not just a question — — of the central functionality of the product, that particular Tait or misleading statement. Well, I believe the central functionality line of cases, which really have to do with product defects, are not applicable to this case. That's our position. And the law is not static. In other words, if you have a line of cases that have to do with defects in a product, such as a laptop or a computer, that's a totally different kind of case than this one, which is that we have the most reviled illegal act on the planet, and they're aware of the fact that they're buying a direct byproduct of that system. And it's obviously in the state interest and the interest of consumers and the interest of consumer law for consumers to get a fair opportunity at the point of sale — But wasn't Mars addressing the same issue? No, it was not, because Mars is just simply a silence argument. In other words, you didn't say — they didn't contend that the chocolate manufacturers made partial statements. They simply just said — But the holding dealt with the question of central functionality of the product, and it was the same issue with respect to slave labor in that case, right? Our case is different. Again, the pleadings are different. If you line up the Mars complaint and our complaint, they're very different. So, no, the central functionality does not apply here. I wanted to get to just a couple of quick points. We are not seeking to somehow blur a bright line, which is what the court below said that we had to — he was worried, the court was worried, that there wasn't a bright line for manufacturers. We are not talking about nutrition here. We are talking about something that even this court has found, that slavery is a material fact which will dissuade a consumer from making a purchase. I'd like to quickly, because I'm getting to my last minute here, point to a December 2015 statement, which appears to be a press release, stating, you may have read or heard about a lawsuit filed recently concerning our sale of shrimp from Thailand. And it then goes on to explain things that it does with regard to slavery. That, once again, is a partial statement that is misleading. I'd like to point out that we were the first filed case in this litany. We were the first filed case. People filed complaints after us that were kind of like ours, but not exactly. We deserve an opportunity to go back to the trial court below and to amend our complaint under the new standard which explains that misrepresentations, which the trial court disregarded, are either actionable or not actionable. We deserve an opportunity to go back and beef up our record on that kind of thing. We filed a case and now the law has changed underneath us, and we deserve a chance to remedy that. And I'll leave it on that. Before we get to that last point. Yes. I'd like an opportunity, if the panel wishes to give it to both sides, to file a supplemental brief on the impact, if any, of the Mars case. We would very much like that, Your Honor. Because I think that case became public and filed so close to this argument that it wasn't feasible to ask for a supplemental briefing. All right. Could we ask for simultaneous briefing on it? Rather than stretching it out too far. How about 14 days? That would be fine, Your Honor. My apologies, Your Honor. I'm going to be volunteering at a church camp up in the mountains next week, and I wonder if we can make it 21 days. That's fine. All right. We'll order simultaneous letter briefs or simultaneous briefs, no more than seven pages, to be filed within 21 days. And we'll enter an order to that effect. Is that acceptable? Yes. Thank you very much for your time today. Thank you, Your Honor. The case just argued is submitted for decision.
judges: Diaz, Schroeder, Gould